HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CARLOS E CASTILLO,

        Plaintiff,

v.

MARTY BROWN, et al.,

        Defendants.

CASE NO. C16-6007 RBL

ORDER GRANTING SUMMARY JUDGMENT

THIS MATTER is before the Court on Defendants' Motion for Summary Judgment. [Dkt. # 40]. The case involves Plaintiff Castillo's 1996 GED test results. The State's position is that there is no evidence that Castillo passed the exam, specifically the written essay portion. Castillo claims he did pass, and he sued 24 people and agencies to establish that fact, and for money damages. He claims they violated his constitutional rights, intentionally interfered with his business expectancies, and retaliated against him.

      Castillo believed and now claims he passed the GED exam at Pierce College in 1996. He had, but no longer has, an original "HSE" certificate (comparable to a high school diploma) establishing that fact. Castillo served in the military (which required a GED) and later obtained a job that required a GED. He applied for a different job in 2012, and during the required

ORDER GRANTING SUMMARY JUDGMENT - 1

background check it was discovered that the State's records did not reflect that he had passed the test. In December, 2012, Castillo made a Public Records Act (PRA) request for his original test scores. At first, Pierce College told him they could not find any record of his taking the exam; two days later they told him the back-up files were "corrupted" and not useable.

Castillo did not get the new job because he could not prove he had a GED. Three months later, Pierce College did find his test scores, though they did not share them with Castillo.

Castillo continued to investigate, both at Pierce College and through the SBCTC. He eventually learned that the records indicated he did not have a required score for the essay portion of the GED test. As a result, Pierce College's records showed, and its various IT and administrative personnel concluded, that Castillo had instead "failed" the GED exam, and did not have a GED. His lack of a GED was also reflected on the State's official "AEGIS" database of GED recipients. Castillo was offered the opportunity to re-take the exam, but he declined.

In June 2014, Pierce College responded to his 2012 PRA request. Castillo claims that they show he did pass the exam. The state found his "raw scores" and, he claims, his "Writing Skills" score would not have been recorded if he had not also taken, and passed, the essay portion of the test. On June 20, 2014, Castillo went to the State Board of Community and Technical Colleges (SBCTC) in Olympia to obtain a replacement HSE certificate. He had them look up his scores—which took "20 seconds"—and they issued him a duplicate HSE certificate that day.

Five days later he submitted a PRA request for "all records with his name" on them. Another week after that (on July 2), he claims, Defendants Main and Sager (employees of the SBCTC and Pierce College, respectively) "decided not to honor" Castillo's duplicate HSE. He claims they did so without giving him an opportunity to be heard, depriving him of due process,

and that they did so in retaliation for filing the PRA request. He also claims they removed his name from the state database of GED recipients, again without notice. Sager later testified she would inform anyone who asked that Castillo did not pass the GED in 1996.

In June, 2015, Castillo sued Pierce College, the SBCTC and the State of Washington in state court, based on these same facts, for violation of the PRA (based on the delay between his 2012 request and the time he got the records). He filed this larger federal action on December 8, 2016, and his state court PRA action was dismissed on summary judgment the following day. [*See* Dkt. 41-9].

All of the defendants seek summary judgment, on all of Castillo's claims. They argue primarily that there is "no evidence" that Castillo passed the GED exam in 1996 or at any other time. Instead, the state records show, and have shown, that he did not. They argue Castillo does not have a property interest in a GED certificate that he did not earn, or the right to have state officials tell persons asking that he did pass the test when he did not. They also raise specific defenses to Castillo's various claims: his intentional interference claims (based on his failure to get the job in 2012) is time barred, and the Eleventh Amendment bars his claims for damages against the State and the agents he sued in their official capacities, he can show no due process violation, and it is not retaliatory to tell the truth. The individuals also claim they are entitled to qualified immunity.

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248-50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52. The moving party bears the initial burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323-24.

There is no requirement that the moving party negate elements of the non-movant's case. *Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990). Once the moving party has met its burden, the non-movant must then produce concrete evidence, without merely relying on allegations in the pleadings, that there remain genuine factual issues. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**A. Castillo's GED exam.**

The Defendants' primary, persuasive argument is that there is "no evidence" Castillo passed the GED exam in 1996. It relies on the official historical record. The back–up CD version of record[1] demonstrates that he did not pass:

---

[1] Apparently the problem was not a "corrupt" CD, but the modern computer's inability to read it. This record was ultimately retrieved by creating a "virtual" DOS-based (old) computer to read the CD.

[screenshot of GEDPLUS.EXE score page for CASTILLO, CARLOS E., Age 19, showing Battery #1 scores dated 08/07/96: Wrt. Skills 45/58/79, Wrt. Essay 0, Sc. Studies 52/58/78, Science 52/59/81, Lit. & Arts 37/60/84, Mathematics 45/59/82; Total Score: 294, Average: 58, Status: Failing]

[Dkt. # 42-1].

Castillo asks the Court to strike the Declaration of the IT person who retrieved the scores from the back up CD, Mike Stocke, because he has no personal knowledge of the facts of this case and because he is not an expert. But he needs neither to explain how he accessed the records. Castillo does not contend that the record is not authentic, just that it is wrong[2]. Castillo's Motion to Strike this Declaration is DENIED.

Against this record, Castillo relies on his own recollection that he took and passed the entire test in 1996: his recollection of having an HSE and using it to enter the military; the temporary duplicate[3] he received, and on newly-disclosed expert testimony from Dr. Skaggs.

Skaggs has demonstrated his familiarity with the GED exam he took in 1996, and with the manner in which it was scored. He claims Castillo would not have gotten a 58 on the "writing

---

[2] Castillo refers to the records as "insecure" but there is not even the suggestion that Castillo's records were altered.

[3] The Defendants explain that when the CD was accessed "in twenty seconds" without a "virtual DOS-based" computer, the scores and the headings for the scores were incomplete. They claim the duplicate HSE was issued in error.

skills" portion of the test (in "Battery # 1", above) if he had not taken the essay portion in Battery # 2. Thus Castillo claims, the fact he had a writing skills score demonstrates he took and passed the GED. The Defendants Move to Strike this Expert testimony because it was not disclosed in Discovery.

Castillo provides no explanation for the untimely (after discovery, in response to summary judgment) disclosure of this expert testimony. And Staggs does not address the raw score on the back-up CD.

The Motion to Strike the testimony of the undisclosed expert is GRANTED, but even if it were considered it is not sufficient his to permit a reasonable jury to find that Castillo passed the GED exam in 1996. The actual, original record has been located and submitted. It shows that he did not pass (probably because he did not take) the essay portion of the "writing skills" portion of the GED exam.

The (temporary) issuance of a "duplicate" HSE, Castillo's vivid memory of passing the test and obtaining the original HSE, the defendants' delay in obtaining the original records, and their erroneous reading of those records in the interim together do not add up to evidence from which a reasonable fact–finder could overturn the official examination results.

**B. Tortious interference.**

There are additional, individual deficiencies in Castillo's various claims aside from the fact he did not pass the GED in 1996 as a matter of law. His intentional interference claim, based on the fact his 2012 prospective employer could not ascertain he had in fact passed the GED, is time barred. He was denied the job no later than the end of 2012. He did not bring this suit until four years later—indeed, he filed a different lawsuit arising out of the same facts in the interim. The limitations period for that claim is three years. RCW 4.16.080(2). Furthermore, there is no evidence that any defendant intentionally interfered with anything, much less for an improper

purpose. This latter analysis applies to any claim based on post-2012 alleged interference, as well.

The Motion for Summary Judgment on Castillo's tortious interference claim is GRANTED and that claim is DISMISSED with prejudice.

**C. Eleventh Amendment Immunity.**

Defendants argue that the Castillo's constitutional claims against them (for damages, in their official capacities, and as the state and its agencies) are barred by the Eleventh Amendment.

"[A] federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief, and may not include a retroactive award which requires the payment of funds from the state treasury." *Edelman v Jordan*, 415 U.S. 651, 677 (1974) (internal citations omitted). State officials in official capacity suits for damages assume the identity of the government that employs them because an award would require payment of funds from the state treasury, thus they are not a "person" under §1983. *See Hafer v. Melo,* 502 U.S. 21, 27 (1991).

Castillo claims he seeks prospective injunctive relief; he asks the Court to enjoin the defendants from denying he has a GED. It is true that such a claim is not barred by the Eleventh Amendment, but his claim for damages is. And the injunctive relief claims fails in the absence of evidence he did in fact pass the GED. Defendants' Motion for Summary Judgment on Castillo's claims for money damages against the State and state officials in their official capacities is GRANTED and those claims are DISMISSED.

**D. Due Process claims.**

Castillo claims the Defendants denied him procedural and substantive Due Process when they "denied him" the GED he earned. He claims that he has a property interest in (an earned) HSE. He claims he had a due process right to be heard when the original (paper) records were

converted to digital files (in 2002), and when Main and Sager "decided" to revoke the duplicate HSE they provided to him. Castillo also claims he was denied the right to be heard when he was "removed" from the state AEGIS database of GED recipients, though it is not clear he was ever on that list.

Defendants argue that because Castillo cannot demonstrate that he earned his GED; he does not have a property interest in it. That issue is addressed above. They also argue that Castillo *did* have an opportunity to be heard: he was told the records did not reflect that he had passed when his prospective employer inquired in 2012, and he was told the same[4] in 2014. They argue that they answered Castillo's 2014 PRA request, and the documents provided again show that the state's only records reflect that he did not pass. Castillo had opportunities to challenge those records at each stage, and he did challenge them through two lawsuits. He has yet to locate or provide evidence suggesting that the State's official record was wrong in 2012 (when the defendants first responded that they had no record of Castillo passing the GED).

The defendants also argue that Castillo's substantive due process claim requires him to establish that he was deprived of his interest in a way that "shocks the conscience" or "interferes with rights implicit in the concept of ordered liberty." *See Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998). They argue that even if Castillo passed the test, the conduct of officials reading and reporting official state records—even wrongly—cannot be deemed to reach this level, as a matter of law.

The Defendants are correct. Even if he passed the GED in 1996, Castillo has not identified any person who deprived him of due process in 2012 or at any other time. He has not

---

[4] It is true Castillo was not told that his duplicate HSE was being withdrawn in 2014 (shortly after it was issued). But he made his PRA request almost immediately, and the state responded.

shown any conduct that "shocks the conscience" as a matter of law. The Defendants' Motion for Summary Judgment on Castillo's Due Process claims is GRANTED.

**E. First Amendment Retaliation Claims.**

Castillo claims that various defendants retaliated against him for exercising his constitutional rights, specifically his 2014 PRA request and his 2015 lawsuit arising out of his earlier PRA request. He claims the retaliation involved "updating the system" to reflect his failing status and Sager's stated intention (in her deposition in the prior suit) to tell anyone who asked that he did not have a GED.

To state a claim for First Amendment retaliation against a government official, a plaintiff must demonstrate that "(1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action." *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010).

Defendants argue that Sager's deposition statement is entitled to testimonial immunity, and that telling the truth is not actionable as retaliation in any event. They also point out that there is no evidence she ever told anyone anything about Mr. Castillo. They also argue that "updating" the records to reflect what they accurately showed when this unusual story began in 2012 is not retaliatory.

Castillo relies primarily (or at least most persuasively) on the fact that Sager withdrew his duplicate HSE about a week after his second PRA request. He also argues that the ensuing PRA litigation was the basis for Sager's retaliation in the form of "updating," or removing him from, the database.

Castillo wins the "temporal" argument, but his retaliation claim depends on some retaliation as well. The defendants' claim that telling the truth is not retaliatory is, at least in this case, accurate. And there is no evidence that Sager even knew of the PRA request at the time the records were updated. Indeed, going back to the core point, there is no evidence that Castillo passed the GED exam. When his prospective employer asked in 2012, the state's records reflected that he had not. Other than the brief 2014 duplicate HSE incident, the State's records have not changed.

As the Defendants repeatedly argue, Castillo has no property or other constitutional interest in a GED he did not earn. Their Motion for Summary Judgment on Castillo's First Amendment Retaliation claims is GRANTED.

**F. Qualified Immunity**

The defendants argue that in any event, Sager and the other individual defendants are entitled to qualified immunity from all of Castillo's § 1983 claims.

Under the qualified immunity doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The purpose of the doctrine is to "protect officers from the sometimes 'hazy border' between excessive and acceptable force." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001)). A two-part test resolves claims of qualified immunity by determining whether plaintiffs have alleged facts that "make out a violation of a constitutional right," and if so, whether the "right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 553 U.S. 223, 232 (2009).

Qualified immunity protects officials "who act in ways they reasonably believe to be lawful." *Garcia v. County of Merced*, 639 F.3d 1206, 1208 (9th Cir. 2011) (quoting *Anderson*, 483 U.S. at 631). The reasonableness inquiry is objective, evaluating 'whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Huff v. City of Burbank*, 632 F.3d 539, 549 (9th Cir. 2011) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). Even if the officer's decision is constitutionally deficient, qualified immunity shields her from suit if her misapprehension about the law applicable to the circumstances was reasonable. *See Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). Qualified immunity "gives ample room for mistaken judgments" and protects "all but the plainly incompetent." *Hunter v. Bryant*, 502 U.S. 224 (1991).

Castillo has established, at the very most, that various state employees were honestly mistaken about his GED status, and about his right to seek information about it. He has not shown that any individual violated a clearly established constitutional right. The individual defendants are entitled to qualified immunity from Castillo's constitutional claims against them, and their Motion for Summary Judgment on this point is GRANTED.

***

For these reasons, Defendants' Motion for Summary Judgment [Dkt. # 40] is **GRANTED** and all of Plaintiff Castillo's claims are DISMISSED with prejudice. All other pending motions are DENIED as moot, and the trial date is STRICKEN.

IT IS SO ORDERED.

Dated this 15th day of May, 2018.

Ronald B. Leighton
United States District Judge